In the Matter of BERNARD J. TINNEY, an Attorney, Respondent.

First Department, May 5, 1919.

Corporations — authority of president to negotiate contracts — attorney and client — title to costs — disbarment for interposing false answer and for making false statement that costs had not been collected and for conversion.

The president of a corporation who is in charge of the management of its business is presumably authorized to execute a contract negotiated by him, and the corporation as against third persons is bound by the acts done within the scope of his apparent authority.

In the absence of an agreement to the contrary, costs belong to the client and not to the attorney.

An experienced attorney at law disbarred for the interposition of a false answer in an attempt to postpone the payment of a just and admitted claim, and also for the making of a false statement to his client that costs had not been collected by him, and for the conversion thereof to his own use.

DISCIPLINARY proceedings instituted by the Association of the Bar.

*Henry Sillcocks* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Bernard J. Tinney*, respondent in person.

CLARKE, P. J.:

The respondent in July, 1879, was admitted to practice as an attorney and counselor at law at a General Term of the Supreme Court held in the county of Dutchess and was practicing as such in the First Judicial District at the time he committed the acts complained of. The charge orginally presented was in substance that in an action instituted by Rogers, Peet & Co. against Carpenters' Trade Journal, Inc., for the recovery of rent due from defendant under a written lease the respondent as attorney for the defendant prepared and caused to be verified and filed an answer which he knew to be false. The learned official referee in his report states: " After the service of the summons, the president

First Department, May, 1919. [Vol. 187.

and treasurer of the corporation consulted the respondent and told him, as he testified, that the corporation owed the money and wanted to get time. This statement the respondent only partially denied. Respondent after an examination of the by-laws of the corporation prepared and caused the president to verify an anwser in which the corporation denied in absolute terms the making of the leases and that there was any sum owing to the plaintiff. This answer he caused to be filed and thereby obtained a postponement of the trial for a considerable time. When the case came up for trial the respondent did not appear because he had been notified by the president that he need not attend. The president, however, was present and stated to the court that there was no defense to the action. The justice presiding, noticing that there was a verified answer, questioned the president who then stated that he had been advised by the respondent to interpose such an answer for the purpose of delaying the action, and thereupon the plaintiff was granted a judgment for the full amount of the claim."

The respondent seeks to justify his action on the ground that the minutes of the corporation failing to show that the execution of the leases in question had been authorized by the board of directors their execution by the president was unauthorized and that, therefore, there was no contract. The referee proceeds:

" In making this claim the respondent loses sight of the well-settled doctrine that presumably the president of a corporation who is in charge of the management of its business is authorized to execute a contract negotiated by him, and the corporation, as against third persons, is bound by the acts done within the scope of his apparent authority. But independently of that the evidence shows that the execution of the leases was ratified by the board of directors by occupying and using the demised premises and that the respondent was aware of it before he drew the answer. He admitted before me substantially that before drawing the answer he knew that the premises had been occupied and used by the corporation for several years and that there was some rent due. It also appears that for some time he had occupied desk room in part of the premises. Moreover, he admitted that he had obtained

an extension of time upon his statement that the matter in controversy would be adjusted before trial."

The whole proceeding, therefore, comes down to the question whether an experienced attorney is guilty of misconduct in preparing and causing to be verified and filed an answer known to him to be sham for the purpose of procuring delay for a client during an attempted enforcement of a just obligation.

The referee concluded that the charge against the respondent had been sustained to the extent stated.

Before this report had been acted upon by this court supplemental charges were filed and were referred to the same referee, charging respondent with misconduct as follows:

That the respondent as an attorney converted $691.34 which he had collected as costs in a certain action; that said sum belonged to a decedent's estate; that when the administrator asked him whether he had collected the same the respondent falsely stated that he had not, and after it had been ascertained that he had collected it and demand was made upon him he refused to do so although he had been paid in full for his services.

The facts as reported by the official referee were as follows: It appears that in three actions instituted by the respondent in behalf of John F. Purcell, as administrator of the estate of Mary H. Purcell, to recover certain moneys belonging to the estate, judgments were recovered amounting altogether to more than $5,000; that on appeals the judgments were affirmed by the Appellate Division and that in settlement of the judgments against them three savings banks which had been sued as codefendants as mere stakeholders, paid the sum of $5,792. The share for which each of the three savings banks was liable was paid on respondent's demand, while accompanied by the administrator, by check or bills handed directly to the administrator. The respondent has not been charged with the conversion of any part of the amount so paid over.

After the collection of the money from the first bank, the Harlem Savings Bank, it was agreed between the respondent and John F. Purcell that the respondent should receive, and he did receive, the sum of $500 on account of professional

services, for which respondent signed a receipt dated December 24, 1915.

After drawing the money out of the second bank, The Bank of Savings, discussions took place between the respondent and the administrator as to the balance remaining due to the respondent, and it was agreed that he then and there receive $250 and $250 more when the money should be gotten out of the third bank, the Emigrant Industrial Savings Bank. In pursuance of this agreement the respondent received $250 and signed the following receipt:

" Received New York, January 20, 1916 from John F. Purcell, the administrator, etc., the sum of $250 on account of services. Balance now due and to be paid $250.

" BERNARD J. TINNEY."

After the money had been drawn out of the third bank, the Emigrant Industrial Savings Bank, Mr. Purcell paid to the respondent the balance of $250 remaining due and the respondent wrote at the bottom of the preceding receipt:

" Received February 11, 1916, from John F. Purcell the above balance. This includes printing, etc. $50.

" BERNARD J. TINNEY."

The $50 referred to in the last receipt was the amount Mr. Purcell had advanced the respondent for expenses. The total amount paid by Mr. Purcell to the respondent amounted to $1,050.

Up to this point the evidence stands practically undisputed. It appears further and it is admitted by the respondent that on December 11, 1916, before the collection from the savings banks of any of the moneys due from and paid by them the United States Fidelity and Guaranty Company, the surety on the appeal bonds, delivered to the respondent a check for $691.34, in payment of six judgments for costs in the three actions. The check was drawn to the order of John F. Purcell, as administrator, or Bernard J. Tinney, his attorney. The respondent indorsed the check and deposited it in his bank account. It is undisputed, therefore, that at the time of the collection of the first moneys from the Bank of Savings when the first conversation regarding the respondent's com-

pensation took place he had already received the costs in the three actions. It is settled law, not disputed by the respondent, that in the absence of an agreement to the contrary costs belong to the client and not to the attorney. He has merely a lien thereon for the agreed or reasonable compensation for his services and when paid his lien disappears.

There was a conflict in the evidence. The respondent claims that there was an agreement to the effect that he should receive one-quarter of the recovery in addition to costs. Mr. Purcell testified that no such agreement was made at any time; that the subject of costs did not come up between himself and the respondent until some time between the collection of the money from the Bank of Savings and the collection from the Emigrant Industrial Savings Bank, and claims that the money belonged to him as administrator; that when some time thereafter he asked the respondent whether the costs had been collected, the respondent replied that they had not; that he, Purcell, did not discover that the respondent had collected them until it was discovered in an accounting in the estate of John Hart, and that he thereupon demanded payment of them and subsequently repeated the demand. The testimony of Mr. Purcell is corroborated in many respects by his son and daughter, while the respondent's testimony in certain respects is self-contradictory and inconsistent.

The learned official referee said: " It is also significant that the receipts which were prepared by respondent in his own handwriting, and which fixed the balance due, are silent as to costs, although the respondent evidently wanted to secure himself against a possible deduction for an advance of $50," and he concludes: " Having seen the respondent as a witness upon the stand and noticed the manner in which he gave and conducted his defense, I cannot, after a careful consideration of the case, avoid the conclusion that his testimony cannot be accepted as true in so far as it is contradicted by that of Mr. Purcell; that the testimony of the latter amply sustains the charges contained in the supplemental petition, and that the respondent has been guilty of professional misconduct as charged."

We have carefully considered all of the testimony and in our opinion it fully sustains the conclusion reached by

the learned official referee.  The respondent is not a young and inexperienced practitioner but has been long at the bar.  The interposition of a false answer in an attempt to postpone the payment of a just and admitted claim is a serious offense, and the false statement to his client that the costs had not been collected by him and the conversion thereof to his own use under the circumstances disclosed by the record cannot be condoned.

Respondent should, therefore, be disbarred.

DOWLING, SMITH, PAGE and SHEARN, JJ., concurred.

Respondent disbarred.  Order to be settled on notice.