Mullan, J. (dissenting).
I dissent. Were it not for the contrary view entertained by my learned brethren, I should have thought it was fairly plain that the execution of the lease by its president bound the defendant. The defendant’s business was that of making confectionery. The lease was obtained, as it itself shows, for that purpose. Concededly, the plaintiff did not know of the by-laws referred to. Was not the making of the lease contract within the apparent scope of the president’s authority? I see no more reason to doubt his right to hire this place than to question his ability to bind his company in the purchase of sugar. As was said in a Pennsylvania case involving a lease entered into by a corporation’s president whose authority was questioned: ‘ ‘ The president of a company presents himself to make a contract, evidently connected with the business; he declares the object and purpose of the contract. Who doubts him? We are a dealing people. Is he asked to produce the charter and the books of the company, *599 to show that he is authorized to make the contract seewndum artem? Such is not the custom. * * * This contract * * * was within the scope of the authority of the president of the company.” Steam-Boat Co. v. McCutcheon & Collins, 13 Penn. St. 13. In Matter of Tinney, 187 App. Div. 569, an attorney was disbarred for the reason, among others, that he advised his corporation- client, sued for rent, to deny the mailing of the lease. The lease was executed by the president without a special authorization by the board of directors that was required by the company’s by-laws; and the attorney argued that he was thus justified in advising the company to interpose a verified answer denying the making of the lease. The official referee had said in his opinion: “ In making this claim the respondent loses -sight of the well-settled doctrine that presumably the president of a corporation who is in charge of the management of its business is authorized to execute a contract negotiated by him, and the corporation, as against third persons, is bound by the acts done within the scope of his apparent authority.” It is true that the referee then proceeded to point out that the company ratified by occupying the demised premises, but it is significant that Clarke, P. J., in writing for the Appellate Division, quoted with apparent approval the part of the referee’s opinion I have -set out. Are we arbitrarily to put leases and other contracts in relation to realty in a class by themselves? Admittedly, a lease contract is as capable of ratification as any other, and the Court of Appeals has said that:" The president ox other general officer of a corporation has power, prima facie, to do any act which the directors could authorize or ratify.” Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 479. In the Gause Case, 124 App. Div. 438, cited by Mr. Justice Finch, the decision was rested squarely on the *600 ground that the contract there in question was so extraordinary that there was no apparent authority to execute it. In the Bohm Case, 9 N. Y. Supp. 514, the court followed a decision in Rathbum v. Snow in a lower court. In the Court of Appeals (123 N. Y. 349) the affirmance was predicated upon the fact that the agent whose authority had heen denied helow had not yet become an agent at the material times, and the court took occasion expressly to repudiate the notion that the contract would have been void because of a by-law of which the other party was ignorant, saying: ‘ By-laws of business corporations are as to third persons private regulations binding as between the corporation and its members or third persons having knowledge of them, but of no force as limitations per se as to third persons of an authority, which, except for the by-law, would be construed as within the apparent scope of the agency.” For the reasons stated I vote to affirm.
Judgment reversed, with thirty dollars costs.